**Bryan HARLESS by his parent and natural guardian William HARLESS, Plaintiffs,**

v.

**Linda DARR, individually and in her official capacity as teacher for the Franklin Township Community School Corporation, et al., Defendants.**

**No. IP 94–498–C–T/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

July 30, 1996.

Edward S. Adams, Indianapolis, IN, for Plaintiff.

David R. Day, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN, John A. Kitley Jr., Beech Grove, IN, for Defendant.

### ENTRY DISCUSSING MOTION FOR SUMMARY JUDGMENT

TINDER, District Judge.

This matter is before the court on the Parties' Cross–Motions for Summary Judgment. In its Entry dated February 27, 1996, the court ordered additional briefing on the question of whether Franklin Township Community School Corporation's ("Franklin's") current policy on distributing literature in school constitutes a prior restraint under the First Amendment of the United States Constitution. The court also permitted the Plaintiffs an opportunity to respond to Defendants' Motion for Summary Judgment on Plaintiffs' claims under 42 U.S.C. § 2000a–1 and 2000a–2, and reserved judgment on the Plaintiffs' state-law claims pending resolution of the remaining federal claims. For the reasons set forth below, the court determines that Franklin's policy is not an impermissible prior restraint under the First Amendment, and that Plaintiffs' claims under 42 U.S.C. § 2000a–1 and 2000a–2 fail as a matter of law. Therefore, the court will **GRANT** the

Defendants' motion for summary judgment on all the Plaintiffs' federal claims, and will dismiss without prejudice the remaining state-law claims.

## I. Background Facts

The parties may refer to the court's Entry dated February 27, 1996 for a statement of the facts in this case.

## II. Analysis

### A. Prior Restraint

Franklin's policy on distributing literature in school provides, among other things, that when a student wishes to distribute more than ten copies of written material on school grounds he or she must comply with the following provision:

> At least forty-eight (48) hours prior to any distribution of material, the student shall notify the principal of his/her intent to distribute, and shall provide a copy of the material to be reviewed by the superintendent.

The question posed here is whether Franklin's current policy regulating the distribution in its schools is an unconstitutional prior restraint. The Defendants argue that requiring students to submit a copy for review does not constitute a prior restraint because the policy does not permit or require the Superintendent to "approve" the distribution. The Plaintiffs argue that such a distinction is quibbling, and that requiring students to submit a copy of the literature in advance of distribution "for review" is tantamount to pre-speech censorship.

■■■ A prior restraint "exists when a regulation '[gives] public officials the power to deny use of a forum in advance of actual expression.' " *Stokes v. City of Madison*, 930 F.2d 1163, 1168 (7th Cir.1991) (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 1243, 43 L.Ed.2d 448 (1975)). The Supreme Court has identified the elements of prior restraint as follows: 1) one seeking access to a forum

must apply for its use; 2) the government authority is empowered to determine whether the applicant should be granted permission to speak on the basis of a review of the content of the speech; 3) the approval to speak depends upon the government's affirmative action; and 4) approval is not a matter of routine, but rather the decision to permit or refuse the speech involves "appraisal of facts, the exercise of judgment, and the formation of an opinion." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1974) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 305, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940)). The court begins by noting that the policy itself does not on its face appear to empower the Superintendent with the discretion to forbid a particular distribution for content-related reasons. Although the policy as written does not completely obviate the potential for censorship—theoretically, the Superintendent under this scheme could, having reviewed the submission, exercise raw power to forbid distribution—, "[t]he relevant question is whether the challenged regulation *authorizes* suppression of speech in advance of its expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 2755 n. 5, 105 L.Ed.2d 661 (1989). On its face, the policy here does not. *Cf., e.g., Burch v. Barker*, 861 F.2d 1149, 1150 (9th Cir.1988) (holding unconstitutional as prior restraint school distribution policy in which "principals were authorized to ban distribution"); *Johnston–Loehner v. O'Brien*, 859 F.Supp. 575, 577 (M.D.Fla.1994) (holding unconstitutional as prior restraint distribution policy vesting Superintendent with discretion to permit distribution).[1] Furthermore, under the distribution policy a student need not await affirmative action from the Superintendent before proceeding with a distribution, *see Southeastern Promotions Ltd.*, 420 U.S. at 554, 95 S.Ct. at 1244, but presumably may proceed with the distribution without the Superintendent's permission. Thus, the court concludes that the policy requiring students to submit a copy of the literature to

---

**1.** Similarly, the policy at issue in *Fujishima v. Board of Educ.*, 460 F.2d 1355, 1356 (7th Cir. 1972) required prior approval of publications. For the reasons stated, the court concludes that the policy in controversy here does not run afoul of *Fujishima*, and does not therefore take up the issue of *Fujishima*'s continued vitality.

be distributed does not constitute an impermissible prior restraint.

■ Furthermore, even if the language contained in the policy raised prior restrain concerns, the court notes that the Plaintiff's challenge to the policy is a facial one, and not a challenge as applied to him. The distinction is significant because "[i]n evaluating a facial challenge to a state law, a federal court must ... consider any limiting construction that a state court or enforcement agency has proffered." *Stokes*, 930 F.2d at 1170 (citing *Rock Against Racism*, 491 U.S. at 795–796, 109 S.Ct. at 2755–2756, and other cases). Thus, "[i]nstead of examining only the ordinance's language, [the court] also examine[s] its administration and implementation." *Id.* Nothing in the record suggests that the policy has been implemented in a way that raises constitutional issues. The parties do not dispute that Bryan Harless, having complied with the regulation, has been able to distribute religious tracts without impediment (subject only to the time, place and manner restrictions also contained in the policy). Nor have the Plaintiffs established that the policy permitting the Superintendent to review literature has, in the two years since its adoption, ever been used to deny a student access to the distribution tables. Although the Plaintiffs posit a hypothetical scenario in which the Superintendent "informally intimidate[s] or otherwise attempt[s] to dissuade a student from distributing tracts ...," (Pls.' Mem. in Resp. to Ct.'s Briefing Schedule at 5–6), nothing in the record suggests that the policy has ever been used in this way.[2] For all these reasons, the court determines that the Franklin policy on distributing literature within its schools is constitutional.

## B. Claims under 42 U.S.C. § 2000a–1 and 2000a–2

■ In its original entry, the court noted that schools were not "public accommoda-

tions" within the meaning of Title II of the Civil Rights Act of 1964. The Plaintiffs have not cited any case law that leads the court to alter this conclusion. Instead, the Plaintiffs apparently argue that 42 U.S.C. § 2000a–1 is not governed by the definition of "public accommodation" set forth in 42 U.S.C. § 2000a. This argument is meritless, as the definition of "place of accommodation" set forth in 42 U.S.C. § 2000a(a)–(b) governs all of Title II, of which 42 U.S.C. § 2000a–1 is a part. Furthermore, the "overriding purpose of Title II [is] 'to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.'" *Daniel v. Paul*, 395 U.S. 298, 307–308, 89 S.Ct. 1697, 1701–1702, 23 L.Ed.2d 318 (1969) (quoting H.R.Rep. No. 914, 88th Cong., 1st Sess., 18). Public schools do not purport to be open to the general public in the ways that, for example, hotels, restaurants, and movie theaters (all establishments explicitly covered by Title II) do. For these reasons, the Plaintiffs' claims under 42 U.S.C. § 2000a–1 and 2000a–2 fail, and the court will enter summary judgment in favor of the Defendants on these claims.

## C. State Claims

The court has determined that summary judgment is appropriate on all the Plaintiffs' federal claims. All that remains in this case are the Plaintiffs' claims under Article 1, §§ 2, 3 and 9 of the Constitution of the State of Indiana. 28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction in a case (such as this one) in which the court has dismissed all claims over which it had original jurisdiction, and the remaining claims raise novel and complex issue of state law. Whether the official policy on distributing literature in

---

2. The Plaintiffs note that the Principal of Bryan Harless' school had "counseled" Bryan that "there were other ways he could spread his faith...." (Pls.' Mem. in Resp. to Ct.'s Briefing Schedule at 6). However, the Principal's actions to which the Plaintiffs refer took place before the adoption of the formal policy at issue here.

In addition, the Plaintiffs argue that statements contained in Defendants' legal brief indicate the "true intent," (Pls.' Mem. in Resp. to Ct.'s Brief-

ing Schedule at 2), of the policy. The Defendants argue in their brief that a school "should be allowed to exercise reasonable judgments," (Defs.' Br. in Resp. to Ct.'s Briefing Schedule, at 7), about what types of publications will be permitted for school distribution. The court regards these statements as legal argument only, and not as evidence of the Defendants' intent to administer the policy in an unconstitutional manner.

schools and the actions of the school officials before Franklin adopted its official policy violate the Indiana constitution are issues of first impression in the State of Indiana. The court therefore will dismiss without prejudice the remaining state-law claims so that the Plaintiffs may, if they choose to do so, pursue resolution of these claims in a state forum.

## CONCLUSION

For all the foregoing reasons, the court will enter summary judgment in favor of the Defendants on the question of whether Franklin's policy on distributing literature in school constitutes a prior restraint under the First Amendment of the United States Constitution, and on the Plaintiffs' claims under 42 U.S.C. § 2000a–1 and 2000a–2. The court will dismiss without prejudice the remaining state constitutional claims pursuant to 28 U.S.C. § 1367(c).