James E. DAVIS, Plaintiff–Appellant,

v.

CITY OF NEW YORK, New York City Police Department, and Howard Safir, Defendants–Appellees.

No. 02–9174.

United States Court of Appeals,
Second Circuit.

Sept. 22, 2003.

828

Harry Kresky, The Law Office of Harry Kresky, New York, NY, for Appellant.

Paul Herzfeld (Michael A. Cardozo, Corporation Counsel for the City of New York, Francis F. Caputo), New York, NY, for Appellee, of counsel.

Present: NEWMAN, CARDAMONE, and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Plaintiff–Appellant James E. Davis[1] appeals from a district court judgment in favor of Defendants City of New York, the New York City Police Department, and former-Police Commissioner Howard Safir (collectively "the City"), setting aside a jury verdict that held the City liable for the refusal to reinstate Davis to his former position as a police officer. Davis claimed, and the jury found, that the refusal to reinstate him was motivated by retaliation for his speech or conduct protected by the First Amendment.[2] Because Davis's case lacks evidence upon which a reasonable jury could conclude that any unlawful retaliation occurred pursuant to a municipal policy or custom, we agree with the district court that Davis cannot recover against the City under 42 U.S.C. § 1983.[3] We affirm.

Davis was fired from the police force on November 4, 1998, one day after his name appeared on the general election ballot as the candidate for the Liberal Party in the race for State Assembly. The City maintained that Davis was fired because New York City law prohibits remaining a police officer while at the same time running for public office as the nominee of a political party. See N.Y. City Charter ch. 49 § 1129. Although his name had appeared on the ballot and he had campaigned in the general election, Davis was not in fact the nominee of the Liberal Party and, therefore, immediately requested his reinstatement on the ground that he had not violated the law.

Despite repeated attempts by Davis to clear up the situation, the City did not reinstate Davis until it was ordered to do so by a state court judge. See Davis v. Safir, No. 122710/98, slip op. at 9–10 (N.Y.App.Div. Jan. 18, 2000) (holding City estopped from enforcing the Charter provision against Davis as it had not done so when Davis previously ran for public office as a true nominee of the Democratic Party in 1997). In the present suit, Davis claims, inter alia, that the City's refusal to reinstate him prior to the state court judgment, despite proof that he had not violat-

1. We note that plaintiff Davis died while this case was on appeal. We reach a decision in this case because a timely motion to substitute a representative was made pursuant to Fed. R.App. P. 43(a).

2. Defendants renew on appeal their claim that there was insufficient evidence from which the jury could infer that the refusal to reinstate Davis was motivated by unlawful retaliation. We need not reach that issue as we find that defendants were properly grant-

ed judgment as a matter of law in the absence of sufficient evidence of a municipal policy or custom.

3. We only endorse the district court decision insofar as it relates to the lack of evidence of municipal policy or custom. The parties have not raised any issues on appeal relating to the propriety of the jury instruction or the verdict sheet, and we do not pass upon those issues in reaching our decision.

ed the Charter provision, reveals that the City—pursuant either to municipal policy or custom—intended to retaliate against him for his outspokenness on issues of public concern, which often included public criticism of the police department, or for his willingness to challenge a well known political incumbent.

A plaintiff who seeks to recover against a municipality under § 1983 must show that the violation of his constitutional rights resulted from a municipal policy or custom. *See Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478–79, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell v. N.Y.C. Dep't. of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Even in the absence of an "explicitly adopted rule or regulation," *Sorlucco v. N.Y.C. Police Dep't.,* 971 F.2d 864, 870 (2d Cir.1992), a plaintiff may prove the existence of municipal policy if he can show that the unlawful act was done or approved by the person with final policymaking authority in the area in which the action was taken. *See Pembaur,* 475 U.S. at 480–81. Where, however, liability is premised on the policymaker's approval of a subordinate's unlawful act, it must be shown that the policymaker ratified the "subordinate's decision and the basis for it," *see City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), as municipalities cannot be liable on a theory of *respondeat superior. See Monell,* 436 U.S. at 694; *see also Brown,* 520 U.S. at 406–07 ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation;

the plaintiff will simply have shown that the *employee* acted culpably.") (emphasis in original).

Certain failures to act—such as failures to train or supervise subordinates—may also evince municipal policy where municipal decisionmakers continue to adhere "to an approach that they know or should know has failed to prevent" constitutional violations. *Id.* at 407; *see also Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) ("[E]vidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges [that constitutional rights were being violated]" may demonstrate deliberate indifference.). But a plaintiff may prevail only where the policymaker's decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown,* 520 U.S. at 411; *see City of Canton v. Harris,* 489 U.S. 378, 388–92, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992).

Custom, on the other hand, may be the basis for municipal liability even where the practice "has not been formally approved by an appropriate decisionmaker," if "the relevant practice is so widespread as to have the force of law." *Brown,* 520 U.S. at 404. Where unconstitutional conduct of subordinates is "permanent" and "well settled," *see Monell,* 436 U.S. at 691, a municipality can be held liable because the practice is "so manifest as to imply the constructive acquiescence of senior policymaking officials." *Sorlucco,* 971 F.2d at 871.

■ Even granting Davis "every reasonable inference that the jury might have drawn in [his] favor," *Hernandez v. Keane,* 341 F.3d 137 (2d Cir.2003), we see insufficient evidence in the record upon which a

830

reasonable jury could have found that the final decisionmaker, whom the parties agree for these purposes was Police Commissioner Safir, ratified any unconstitutional conduct toward Davis and the unlawful basis for such conduct. *Davis v. City of New York,* 228 F.Supp.2d 327, 339–42 (S.D.N.Y.2002). Nor was there sufficient evidence from which a jury could infer that Safir was deliberately indifferent to the risk that Davis's rights were being violated. *Id.* at 342–44.

Although Safir was reported to have said that he would look into the circumstances of Davis's firing from the police force, there is no evidence that Safir became aware of, or was even alerted to, the possibility that his subordinates' decision to fire Davis or their subsequent refusal to reinstate Davis was motivated by First Amendment retaliation. *Id.* at 341–42. Furthermore, any failure on Safir's part to "investigate the basis of a subordinate's discretionary decisions" cannot by itself give rise to municipal liability. *Praprotnik,* 485 U.S. at 130.

██ Davis's evidence of custom was also insufficient as no reasonable jury could infer that there was a well settled practice of First Amendment retaliation from testimony to the effect that the police department engages in surveillance of groups that engage in public criticism of the department. Nor can such an inference be drawn from one completely unrelated, prior lawsuit in which the City was held liable for an unlawful and retaliatory firing of an employee. *Davis,* 228 F.Supp.2d at 344–46. On this point, we are in agreement with the district court that *"two incidents* of unconstitutional conduct by low-level employees ... can never provide a reasonable basis for finding a *widespread* or *well-settled* custom." *Id.* at 346 (emphasis in original).

We need not belabor these points as the district court properly held that the high burden of establishing municipal liability could not conceivably have been met on this record. For substantially the reasons relied upon by the district court in granting the City judgment as a matter of law on the issue of municipal policy or custom, the judgment is AFFIRMED.