Alexandra **GILMORE** and Juliet Jordan–Thompson, on behalf of themselves and the Voters of the Amityville Union Free School District, Plaintiffs,

v.

The **AMITYVILLE UNION FREE SCHOOL DISTRICT**, Leroy Van Nostrand, Bruce MacGill, Stephanie Andrews, and George Wolf, Defendants.

No. CV–02–3751(TCP)(WDW).

United States District Court, E.D. New York.

March 2, 2004.

---

John Ray, John Ray and Associates, Miller Place, NY, for Plaintiffs.

Raymond G. Keenan, Guercio & Guercio, Farmingdale, NY, William D. Wexler, North Babylon, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants Amityville Union Free School District ("the District"), Stephanie Andrews ("Andrews") and Bruce MacGill

("MacGill"), (collectively "defendants") bring this motion to dismiss the amended complaint of plaintiffs Alexandra Gilmore ("Gilmore") and Juliet Jordan–Thompson ("Jordan–Thompson"), (collectively "plaintiffs"), for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).[1] The defendants also move to dismiss the amended complaint against the individual defendants, Andrews and MacGill, pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction based on a failure to timely serve in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. Alternatively, the defendants move to stay the proceedings based on abstention principles due to the related administrative proceeding (the "Administrative Proceeding") before the New York State Commissioner of Education.[2]

This is the defendants' second motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Oral argument on the defendants' first motion to dismiss the plaintiffs' original complaint was heard on January 31, 2003. In an Order dated February 9, 2003, this Court dismissed the plaintiffs' 1983 claims with leave to amend, advising the plaintiffs to "adequately allege municipal liability and to clarify the basis for a finding of intentional or purposeful discrimination."

*Gilmore v. Amityville Union Free School District,* No. 02–CV–3751, at 23 (February 27, 2003).[3]

For the foregoing reasons, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) should be GRANTED as to all federal claims, and as this Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. 1367(c)(3), all remaining State law claims should also be DISMISSED without prejudice to any similar State proceedings.

## BACKGROUND

This is a purported class-action which challenges the District's election for three seats on its Board of Education. As a Fed.R.Civ.P. 12(b)(6) motion requires this Court to find all allegations contained in the plaintiffs' amended complaint to be true, the facts below are derived from the amended complaint, unless otherwise indicated.

### A. The Parties

Named plaintiffs Gilmore and Jordan–Thompson are African–Americans and residents of the District. Gilmore resides in Massapequa, New York and Jordan–

---

1. Named defendants LeRoy Van Nostrand ("Van Nostrand") and George Wolf ("Wolf") have not moved to dismiss the amended complaint nor has either submitted any papers related to the pending motions.

2. As the Commissioner of Education handed down his decision in this matter on May 30, 2003, in favor of the defendants, the question of abstention is moot, and need not be addressed.

3. The plaintiffs' amended complaint (pgs.7–28) alleges the following ten claims:

1 & 2. Deprivation of civil rights under 42 U.S.C. § 1983 and claim for attorneys' fees under 42 U.S.C.1988;

3. Deprivation of full and equal enjoyment of the facilities and advantages of a school district under 42 U.S.C. § 2000a;
4. Discrimination in public education under 42 U.S.C. § 2000c–8;
5. Deprivation of voting rights under 42 U.S.C.1971;
6. Fourteenth Amendment equal protection violation;
7. Violation of New York State Civil Rights Law § 40;
8. Violation of New York State Civil Rights Law § 40c;
9. Violation New York State's Constitution Article 1 § 11, equal protection;
10. Violation of New York State's Constitution Article 1 § 11, racial discrimination.

Thompson is a resident of Amityville, New York.

While not a party to the present action, Tori A. Bean ("Bean"), who is African-American and Sam Williams ("Williams"), who is Caucasian, are also residents of the District. Jordan–Thompson, Bean and Williams were all candidates for the Board, as well as voters in the District, in May 2002.

The plaintiffs purport to represent a class of approximately 1,800 voters of the Amityville School District, whose votes in a May 21, 2002, school board election were allegedly wrongfully tampered with and counted for the wrong candidates after the votes were tallied.

Defendant District is a duly organized school district existing under the laws of the State of New York, located in Amityville, New York. Defendants MacGill, Van Nostrand, Williams and Wolf are residents of Suffolk County, New York, and each is an agent or employee of the District.

## B. Factual Background

### 1. The Election

The May 21, 2002, school board election was for three seats on the District's Board of Education ("Board"). Bean ran as a candidate for Seat # 1 against Connie Palazzo ("Palazzo"). Bean was the incumbent. Jordan–Thompson ran as a candidate for seat # 3. Running against her was Barbara Trant ("Trant")[4] and Diane Egglinger ("Egglinger"). Williams ran for Seat # 5 against Charles Walters ("Walters"). Bean, Jordan–Thompson and Williams ran as a group known as "Strong Voice of Parents" ("SVP"). Palazzo, Egglinger, Walters and defendant Andrews ran as the "MMAC pack", a name given to them by a local newspaper. The ballot

4. Trant is Caucasian.

was set up by the District. The relevant part of the ballot was set up as follows:

Seat # 1
 1A Palazzo
 1B Bean
 1C [blank]

Seat # 3
 3A Trant
 3B Jordan-Thompson
 3C Egglinger
 3D [Blank]

Seat # 5
 5A Williams
 5B Walters
 5C [Blank]

The voting machines were provided to the District by "Election Machine Services" ("EMS"), a private company retained by the District. The President of EMS is Wolf, who is a former Suffolk County Board of Elections Commissioner.

The election took place at two locations: the Amityville High School and the Northeast Elementary School. There were two voting machines at each location and the polls closed at 10 p.m.

### 2. The Counting of Votes

After the polls closed, MacGill, the District's Chief Inspector of Elections, opened the rear panel of the voter machines at Amityville High School, in the presence of Gilmore. Upon opening the machine, those present noticed that the vote tally for Line 1C, where no candidate appeared, was not blank, but rather indicated a vote total of 181 votes, that no votes were cast for Palazzo in Line 1A, and that Bean received 416 votes on Line 1B. Similar errors occurred for Seat 3. For Seat 5, however, the results were slightly different. There were 451 votes cast on line 5C and Walters, on line 5B, received no votes.

Seat # 1

| | | |
|---|---|---|
| 1A | Palazzo | 0 Votes |
| 1B | Bean | 416 Votes |
| 1C | [blank] | 181 Votes |

Seat # 3

| | | |
|---|---|---|
| 3A | Trant | 0 Votes |
| 3B | Jordan-Thompson | 125 Votes |
| 3C | Egglinger | 91 Votes |
| 3D | [Blank] | 379 Votes |

Seat # 5

| | | |
|---|---|---|
| 5A | Williams | 129 Votes |
| 5B | Walters | 0 Votes |
| 5C | [Blank] | 451 Votes |

MacGill declared that the votes were incorrect and shut the machine upon agreement of all present. Van Nostrand, the District's attorney, then arrived and directed MacGill to re-open the back of said machine.

At 10:45 p.m., when Andrews, the Board President and a member of the "MMAC pack" arrived at the polling place, she, along with Van Nostrand, MacGill, Gilmore and others again observed the re-opening of the machine and re-inspection of the tallies. The machine was then closed. Around this time, Wolf also appeared at the polling place.

The machine was then re-opened and viewed by those present. Andrews thereafter announced a plan for counting the machine votes. For Seat # 1 she announced that the votes received by Bean would be counted as votes for Palazzo and that the votes on Line 1C would be counted as votes for Bean. For Seat # 2 she would count the votes received by Jordan–Thompson as votes for Trant, the votes for Egglinger would be counted as votes for Jordan–Thompson and the votes on Line 3D counted as votes for Egglinger. For Seat # 5 the votes on Line 5C would be counted as votes for Walters.

Gilmore and other voters protested this decision. The voters demanded that Wolf, Van Nostrand, Andrews and MacGill suspend the count and that the machines be impounded until a proper authority could examine the machine in question. The said defendants refused.

Andrews and Van Nostrand then tallied the votes from all four machines in accordance with Andrews' plan. After counting all four machines in this manner, the results were announced at 11:30 p.m. on May 21, 2002. The winners were Palazzo, Egglinger and Walters.

### 3. Subsequent Actions

The next day, May 22, 2002, Gilmore and Alicia Lindo, a member of SVP, wrote a letter to the defendant's district clerk requesting that the machines be impounded. The defendants again refused. The plaintiffs contend that instead, the defendants had the machines zeroed out.

The plaintiffs also point to a letter written by Van Nostrand on May 24, 2002, in which he states that Wolf told him on May 22, 2002, that the machines were zeroed out on May 23, 2002. The plaintiffs note that this is contradictory and that the purpose of the letter was to infer that the District did not know of the irregularities until May 22, 2002, when indeed they knew on election night. The amended complaint alleges that Wolf and Van Nostrand should have known that the machines should not have been zeroed out and that they wrongfully prevented the Commissioner of Education or the Board of Elections from examining the record.

### C. Procedural History

The formal election results were announced on June 18, 2002 and the new members were sworn in on July 2, 2002. The plaintiffs filed for an injunction with the New York State Commissioner of Education on June 20, 2002. The Commissioner denied the motion for an injunction by letter dated July 2, 2002, and in a decision dated May 30, 2003, dismissed the plaintiffs' petition for several reasons, including

the fact that the plaintiffs had "not established any violation of the Education Law or regulations." (Defs. Reply Aff. Ex. 1 at 5).[5]

On June 24, 2002, the plaintiffs instituted this federal action seeking to set aside the election results, removal from the Board of the successful candidates and a new election under this Court's supervision. In addition, the plaintiffs seek $36 million in compensatory and punitive damages and attorney's fees.

## DISCUSSION

### A. What the Court May Consider

The defendants have submitted the May 30, 2003 Order from the Commissioner and their pleadings and affidavits in support of that administrative hearing. As the plaintiffs referenced the administrative hearing and the documents submitted by defendants in their amended complaint, it appears that this Court may consider all of the defendants' submissions.[6] *See Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir.1991); Fed.R.Civ.P. 10(c).

### B. 12(b)(6) Motion

#### 1. *Legal Standard*

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Formica v. Town of Huntington*, No. 96–7206, 1996 WL 688451, *1, 1996 U.S.App. LEXIS 31031, at *4 (2d Cir. Sept. 19, 1996) (citation omitted). Under the Federal Rules of Civil Procedure, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 34 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The Court must accept as true all material facts well-pleaded in the complaint and must make all reasonable inferences in the light most favorable to the plaintiff." *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F.Supp. 1273, 1278 (E.D.N.Y.1995).

#### 2. *1983 Claim*

Section 1983 creates a claim against any person who, acting under color of State law, abridges rights created by the Constitution and laws of the United States. Here, the plaintiffs contend that the defendants' actions "caused them the loss of their voting rights, the loss of school board seats which were won, and the destruction of a fundamental system of election of local school board members." (Amend. Compl. at ¶ 110). Plaintiffs' 1983 claim appears to

---

**5.** In addition, the Commissioner stated:

The election officials appropriately attributed the votes registering on the back of the machine counter rows to the corresponding counter rows to the corresponding row of names on the front of the machine, notwithstanding the offset of the row letters. I find that the offset of the rows was technical in nature and did not result in an erroneous tabulation of the votes.

Defs. Reply Aff. at 6.

**6.** Specifically, the plaintiffs alleged that the defendants submitted "false and misleading documents to the Commissioner seeking to uphold the wrongful acts." (Amend. Compl. at 97); *See also* (Amend. Compl. at 99) ("Even when notified of the said wrongful actions and implications thereof by means of a petition to the New York State Commissioner of Education, defendants failed and refused to set aside the election results as defendants had determined them").

be based on a violation of equal protection as guaranteed by the Fourteenth Amendment.

First, in order to find a municipality such as the District liable, the plaintiffs must show that a "municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *See also Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Even in the absence of an 'explicitly adopted rule or regulation,' a plaintiff may prove the existence of municipal policy if he can show that the unlawful act was done or approved by the person with final policymaking authority in the area in which the action was taken." *Davis v. City of New York,* 75 Fed.Appx. 827, 829 (2d Cir.2003) (quoting *Sorlucco v. N.Y.C. Police Dep't.,* 971 F.2d 864, 870 (2d Cir. 1992); *See also Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). In addition, the inference that a policy existed may also "be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) (citing *City of Canton v. Harris,* 489 U.S. at 388–98, 109 S.Ct. 1197 (1988)).

■ In the present case, the amended complaint once again fails to state a claim under 1983 against the District because the plaintiffs simply can not show that the defendants actions were done or approved by a person with "final policymaking authority." *Davis,* 75 Fed.Appx. at 829. Though the amended complaint attempts to argue that the defendants put themselves in the position of being the "final policy-makers" by "refusing to impound machines, wiping out tallies and declaring winners," this merely serves to obfuscate the clear fact that the Commissioner of Education is, and has always been, the "final policy-maker." (Amend. Compl. at 90–92). Indeed, N.Y. Educ. Law 2037 states that "all disputes concerning the validity of any district meeting or election or of any of the acts of the officers of such meeting or election shall be referred to the Commissioner of Education for determination and his decisions in the matter shall be final and not be subject to review." *Id.* Further, the allegations as stated, prevent any reasonable inference that the District failed adequately to train its employees. Thus, the plaintiffs' amended complaint fails to state a claim against the District based on 1983.

■ Second, the plaintiffs' amended complaint also fails to state a 1983 claim against the non-municipal defendants. Under *Powell v. Power,* 436 F.2d 84 (2d Cir.1970), a plaintiff who can only establish "unintended irregularities" in the conduct of an election is not able to obtain 1983 relief in the federal court system as long as an adequate and fair State remedy exists. *Id.* at 85–88. *See also Donohue v. Board of Elections,* 435 F.Supp. 957, 968 (E.D.N.Y.1976) (J., Mishler). Indeed, the Second Circuit Court of Appeals in *Gold v. Feinberg,* 101 F.3d 796 (2d Cir.1996), reaffirming *Powell,* held that there must be "intentional or purposeful discrimination" in order to sustain a § 1983 claim to remedy errors in the election process allegedly violating equal protection. *Id.* at 800–03.

■ Again, the plaintiffs have failed to show any "intentional or purposeful discrimination" on the part of the defendants in their amended complaint. Although the plaintiffs contend that the tallying of the

votes was racially motivated, they plead no facts in support of this argument. As in the original complaint, the plaintiffs allege conclusory claims of discriminatory intent as the reason behind the defendants' decision to tabulate the vote in the manner chosen. Moreover, there are no allegations of a specific discriminatory act or utterance by the defendants. Indeed, the plaintiffs merely allege that "[a]lthough the method chosen by the defendants to tally the aforesaid votes, applied to African–American candidates as well as to the White candidates, *the effect intended by defendants in so improperly tallying the votes necessarily would and did eliminate entirely any African–American person from serving on the defendant school board.*" (Amend. Compl at 87) (emphasis supplied).

Further, although Judge Leo Glasser in *Ladner v. City of New York*, No. CV–94–2863, 1995 WL 62687 at *3 (E.D.N.Y. Feb.9, 1995), stated that the discriminatory intent sufficient to overcome a motion to dismiss "may be reasonably inferred from plaintiff's papers," it is difficult to infer any discriminatory intent based on the plaintiffs' amended complaint. As this Court pointed out to the plaintiffs in its February 27, 2003 Order:

> the Court notes that the allegations in the current complaint related to the tallying of the votes, by themselves, make it difficult to infer any 'purposeful or discriminatory intent' on the part of the defendants. *The method of counting the votes applied equally to all candidates, and two Caucasians and two African–Americans lost under this method.* Had the votes been counted as Plaintiffs argue, thousands of votes would not have been counted. Even on the face of the complaint, it appears that the method of counting the votes, by moving each tally of votes up one seat, may well have been necessary to correct for a technical failure in the formatting of the machines and to ensure that the votes were counted in accordance with the manner in which they were cast.

*Gilmore v. Amityville Union Free School District, et al,* No. 02–CV–3751, at 20–21 (February 27, 2003) (emphasis supplied).

Aside from a smattering of conclusory allegations in the plaintiffs' amended complaint, this Court is again unable to infer any discriminatory intent by the defendants. Moreover, an adequate State remedy clearly exists in this situation and indeed, has already been utilized by the plaintiffs. Under N.Y. Educ. Law 2037, all school board election disputes are referred to the Commissioner of Education. As noted above, the plaintiffs have already availed themselves of this remedy and on May 30, 2003, the Commissioner handed down his decision dismissing their claims. Therefore, the plaintiffs have failed to make out a 1983 claim against the remaining non-municipal defendants and the claim should be dismissed.

### 3. 42 U.S.C. § 2000a, § 2000c–8, and § 1971 Claims

■ All three of the above claims should also be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). First, 2000a prohibits discrimination and segregation in places of "public accommodation." As the court stated in *Harless v. Darr,* 937 F.Supp. 1351 (S.D.Ind.1996), "the overriding purpose of Title II[is] 'to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.'" *Id.* at 1354 (quoting *Daniel v. Paul,* 395 U.S. 298, 307–8, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969)). The *Harless* court went on to explain that "[p]ublic schools do not purport to be open to the general public in the ways, that for example, hotels, restaurants and movie

theaters (all establishments explicitly covered by Title II) do." *Id.* Therefore, as the plaintiffs have not offered any evidence to the contrary, their claim under 2000a should be dismissed.

Second, 2000c–8 was enacted to remedy the problem of segregation in public schools and colleges. 15 Am.Jur.2d Civil Rights 26. The plaintiffs allege no specific facts in support of this claim in their amended complaint, nor did they respond to defendants' arguments for its dismissal in their motion papers. Accordingly, the plaintiffs' claim under 2000c–8 should also be dismissed.

 Third, 1971 does not provide for a private right of action by individuals. Its provisions are only enforceable by the United States of America in an action brought by the Attorney General and may not be enforced by private citizens. *See* 42 U.S.C.1971(c); *Cartagena v. Crew,* No. 96–3399, 1996 WL 524394, *13 n. 8 (E.D.N.Y. Sept.5, 1996); *McKay v. Thompson,* 226 F.3d 752, 756 (6th Cir.2000); *Willing v. Lake Orion Community Schools Bd. of Trustees,* 924 F.Supp. 815, 819 (E.D.Mich. 1996); *Spivey v. State,* 999 F.Supp. 987, 996 (N.D.Ohio 1998); *McKay v. Altobello,* No. 96–3458, 1996 WL 635987, *3, *4 (E.D.La. Oct. 31, 1996). Therefore, the plaintiffs' 1971 claim should also be dismissed.

## C. Plaintiffs' Remaining State Law Claims

Under 28 U.S.C. 1367(c)(3), this Court may decline to exercise supplemental jurisdiction over related State law claims, if it has "dismissed all claims over which it has original jurisdiction." *Id.* While 1367(c)(3) does not require dismissal, "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) (*citing*

*Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994)); *See also Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir.1998) (noting that it is particularly appropriate for the district court to dismiss where "the federal claim on which the state claim hangs has been dismissed").

As explained *supra,* the defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint is granted, leaving only plaintiffs' State law claims. Accordingly, under 1367(c)(3), this Court declines to exercise supplemental jurisdiction over the remaining State law claims.

## D. 12(b)(2) Motion

The individual defendants, MacGill and Andrews, contend that they were not served with a summons and complaint within 120 days as required by Fed. R.Civ.P. 4(m). However, as the Court is granting defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) and declining to exercise supplemental jurisdiction over the remaining State law claims, the plaintiff's complaint is dismissed in its entirety against the District, Andrews and MacGill. Therefore, there is no need for the Court to reach this argument and accordingly, it declines to do so.

## CONCLUSION

It is hereby ordered that defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) should be GRANTED as to all federal claims, and as this Court DECLINES to exercise supplemental jurisdiction pursuant to 28 U.S.C. 1367(c)(3), all remaining State law claims should also be DISMISSED without prejudice.

SO ORDERED.