Linda OLLE, Plaintiff,

v.

COLUMBIA UNIVERSITY, Michael
Janeway, and Andras Szanto,
Defendants.

No. 02 Civ. 8552(RWS).

United States District Court,
S.D. New York.

Aug. 15, 2004.

Linda Olle, New York, NY, Plaintiff pro se.

Friedman Kaplan Seiler & Adelman, New York, NY (Robert D. Kaplan, Emily A. Stubbs, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

Defendants the Trustees of Columbia University in the City of New York, sued here as Columbia University ("Columbia" or the "University"), Michael Janeway ("Janeway"), and Andras Szanto ("Szanto") (collectively, "Defendants") have moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, dismissing the amended complaint of plaintiff Linda Olle ("Olle"), who is proceeding *pro se*. For the reasons set forth below, Defendants' motion for summary judgment is granted as to the first, second, and third causes of action in Olle's amended complaint, and Olle's fourth cause of action is dismissed without prejudice.

### Prior Proceedings

Olle commenced this action on October 25, 2002, and Janeway and Szanto moved

to dismiss the complaint with prejudice on January 30, 2003. Olle subsequently was granted additional time to replead and Janeway's and Szanto's motion to dismiss was denied as moot. Olle thereafter filed an amended complaint on April 17, 2003, claiming sex and age discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq.* ("NYCHRL"). Defendants filed an answer on May 2, 2003.

Discovery proceeded, various applications to compel discovery were disposed of, and the instant motion was filed on December 19, 2003. Following briefing by the parties, the motion was taken on submission on February 25, 2004.

### The Facts

The facts are set forth based upon Defendants' Local Rule 56.1 statement and supporting declarations and upon Olle's submission,[1] and are undisputed except as noted below. They do not constitute findings of fact by the Court.

The National Arts Journalism Program ("NAJP" or the "program") at Columbia offers residential fellowships at Columbia to mid-career and senior arts journalists. In the fall of 2000, NAJP was seeking to add an Associate Director. Janeway and Szanto, the Director and Deputy Director of NAJP, respectively, interviewed both men and women for the position. It was their hope to increase diversity in the management of the program by hiring a woman. After their initial choice of a candidate for the position declined the job offer, Janeway and Szanto offered the position to Olle, a woman who was 48 years old at the time she was hired.

Olle commenced work on November 13, 2000. As Associate Director, she assisted and reported to Janeway and Szanto.

Almost from the outset, Janeway and Szanto had concerns about Olle's job performance. Those concerns included, *inter alia*, her uncertainty about well-established policies and decisions, problems with her management of the NAJP newsletter, problems with her communications with fellows, and breaches of protocol with respect to communications with NAJP's principal funder.

In an e-mail to Olle dated March 29, 2001, Janeway described policies at NAJP and concluded "I had thought that this and more was established in your hiring interviews and in the early weeks of your coming on board, but it appears that we'll need to talk more on these topics." (Pl.Exh. 2.) In response, Olle wrote: "Well, that was a long and thoughtful message, and I appreciate it." (*Id.*)

---

1. In light of her *pro se* status, Olle's failure to submit a Local Civil Rule 56.1 statement is not fatal to her opposition here. *See, e.g., McAllister v. New York City Police Dept.,* 49 F.Supp.2d 688, 693 n. 2 (S.D.N.Y.1999) (noting that, despite the failings of the *pro se* plaintiff's purported Local Civil Rule 56.1 statement, "it is well settled that a *pro se*'s papers are to be read liberally," and concluding that, "to the extent that [the plaintiff] sets forth facts based upon personal knowledge in his signed briefs, his affidavits and his Rule 56.1 Statement, the Court will consider those facts and will not deem admitted contrary facts in the [defendant's] Rule 56.1 Statement"); *Burke v. Royal Ins. Co.,* 39 F.Supp.2d 251, 257 (E.D.N.Y.1999) (addressing the merits of a defendant's motion for summary judgment against a *pro se* plaintiff "in light of the entire record before the Court," despite plaintiff's failure to submit a Local Civil Rule 56.1 statement "or to present factual material in evidentiary form"). To the extent her submission contains facts based on personal knowledge or otherwise admissible evidence, those facts will be considered in conjunction with the instant motion.

In an e-mail to Szanto dated April 9, 2001, Janeway commented to Szanto that Olle had "a deficiency of strong native managerial instinct." (Declaration of Robert B. Kaplan, dated Dec. 18, 2003 ("Kaplan Decl."), Exh. 8.)

As early as February 2001, Janeway and Szanto spoke to Kathryn Beeby ("Beeby"), Associate Dean for Administrative Affairs of the Graduate School of Journalism, who managed human resources for NAJP about their concerns. In March 2001, Beeby raised the possibility with Janeway and Szanto that, in addition to any problems specific to Olle, the managerial structure of NAJP might have been misconceived in relation to the size of the program. The program had only thirteen fellows, and Beeby suggested that three director-level managers might be more than NAJP needed. After considering Beeby's suggestion and consulting with The Pew Charitable Trusts ("Pew"), NAJP's principal funding source, Janeway and Szanto agreed, and they decided to eliminate the Associate Director position.

Olle was told on May 29, 2001 that her position was being eliminated. Olle's employment was terminated by the same people who hired her only seven months earlier. The Associate Director position has not been reestablished since Olle's termination, and since July 2001 NAJP's staff has consisted of a Director, Deputy Director, and several lower-level assistants.

In an e-mail from Janeway to Szanto, dated May 29, 2001, Janeway reiterated the decision to reorganize, stating that "we made the decision we made and we're sticking with it—period, we're reorganizing." (Pl.Exh. 8.) Janeway also wrote,

[I] thought the whole point about the 'reorganization' scenario was that we stayed with the script, and our resolution of the situation, painful as it might be, did not get into ameliorative mea-

sures to ease the pain, as if we'd gone down the road (which I would have preferred in many ways) of 'it didn't work out.' ... [I] feel that we've been caught between telling the truth about incompetent performance, together with copious statement approaching discipline about it, and the script we agreed to....

(*Id.*)

Olle alleges that her work area at NAJP was subject to a break-in in or around the time of her termination, and that it was sexist not to file a police report as a result of the incident. Defendants argue that there is no evidence of such a break-in. Candido Caraballo ("Caraballo"), a member of Columbia's custodial staff, has testified that he heard a loud noise early one morning and, upon investigation, determined that a panel had fallen off the wall of Olle's cubicle. Szanto was there as well, and he too heard the noise and went to investigate. He saw no intruder, and found that a panel had fallen off the cubicle wall. Caraballo also testified that the shoe-heel marks Olle has described as evidence of the break-in were likely made when he tried to re-hang the wall panel.

At her deposition, Olle withdrew her claim that she had been discriminated against on the basis of her sex and age with respect to her wages. She also testified that she had earned more at NAJP than at any other job she ever held. She further testified that she was not asserting a claim of retaliation in this case.

At her deposition, Olle did not dispute that in her position as Associate Director she was subordinate to the Director and Deputy Director of NAJP, and she admitted that it was typical in the academic world for only the most senior officials to sign diplomas. She also acknowledged that senior executives often do not write their own letters and that the subordinates

who do write them do not get to sign their names. She further testified that it was well within the prerogatives of Janeway, as Director of NAJP, to decide who would speak to the NAJP Board, and that it was not discriminatory to reserve that role to the most senior officers.

Olle alleges that she was prevented from speaking to Columbia's administration but she does not relate a single example of a communication that she was prevented from making. Rather, she refers to on e-mail in which Janeway told her that she would not be communicating directly to an individual at Pew. Olle offers no explanation as to why it was sexist, ageist, or otherwise inappropriate for Janeway to tell her to clear communications with the Pew representative through him.

Olle's co-workers have denied hearing Janeway or Szanto make any sexist or ageist remarks to or about Olle. Twelve of the thirteen fellows resident at NAJP when Olle worked there have submitted declarations denying having heard Janeway or Szanto make any sexist or ageist remarks to or about Olle. Two of the fellows, Naomi Person ("Person") and Thomas Conner ("Conner") deny having felt "verbally abused" by Szanto when they, along with Olle, declined to attend an event while on a fellows' trip to Dublin, Ireland. Both Person and Conner deny experiencing any sexism, ageism, or homophobia at NAJP.

Olle alleges that Peggy Chapman ("Chapman"), Jeannie Im ("Im"), Rebecca McKenna ("McKenna"), and Aileen Torres ("Torres") were mistreated while employed at NAJP. Every employee Olle alleged was mistreated has denied feeling mistreated in any way. Specifically, Im denies ever seeing or being asked to file anything sexist, disgusting or otherwise inappropriate. Chapman, who worked for NAJP for three years, testified that she

never felt discriminated against on the basis of sex or for any other reason, and further testified that she did not find NAJP to be a hostile work environment for women, contrary to what Olle had alleged Chapman felt. Chapman went on to testify that she was always treated fairly and appropriately, and believed NAJP to provide a supportive environment for women. Torres testified that she wrote an e-mail to both Janeway and Szanto because she was upset by a NAJP candidate's rude treatment of her. Szanto asked her to write a follow-up e-mail explaining the details, which she did, without any coaching from Szanto.

In an e-mail to Olle dated February 20, 2001, Janeway wrote that, in selecting NAJP fellows, "the weight of our experience has been, younger and more full of promise is better." (Pl.Exh. 1.)

At her deposition, Olle explained that she does not allege that male and female fellows were treated differently with respect to stipends, housing, or any other term of their fellowships. The only written complaint as to which she testified was prepared by a non-fellow guest at a luncheon, who complained about a single comment about a sexual fantasy that Janeway made during a discussion with playwright Eve Ensler ("Ensler"), author of the *Vagina Monologues*.

Olle alleges that Szanto told his assistants that an incoming fellow, Wendy Lesser ("Lesser"), would be a problem because she was older. According to Torres, who is one of Szanto's assistants. Szanto merely said that Lesser was particular and might need special attention. He did not say that Lesser would be a problem, he did not mention her age or gender, and Torres did not think the comment was age-related or otherwise offensive.

NAJP fellow John Habich ("Habich") has denied that he withheld his article for NAJP's publication deliberately as Olle has alleged, that he thinks Szanto is homophobic, or that felt abused by Szanto.

Neither of NAJP's senior women fellows, Patricia Bosworth ("Bosworth") or Lesser, believes that Janeway or Szanto failed to attend events or activities they organized for discriminatory reasons.

Olle testified at her deposition that film critic Pauline Kael ("Kael") was given the first Distinguished Lectureship ever awarded by NAJP and was awarded $15,000 based on a contract that called for her to come to New York to give a single lecture. NAJP fellowships require full-time residence in New York, and Olle testified that Kael did not wish to live in New York.

Every fellow that Olle has alleged was offended by Janeway's comments during a luncheon discussion with Ensler denies that he or she was offended or believed that Janeway's comments were offensive or inappropriate. None of the twelve fellows who have submitted declarations in this action recalls Janeway telling the fellows not to say anything negative about NAJP in connection with a survey of the fellows commissioned by Pew.

Olle alleges that, in response to a request for a reference for Olle from a potential employer, Szanto only provided basic employment information. It is Columbia's policy not to provide more than basic employment information in response to an outside inquiry without written authorization from the employee. This policy is posted on Columbia's web site.

Olle never asked either Janeway or Szanto for an employment recommendation. Olle is unaware of any potential employer, other than David Bodnick ("Bodnick"), seeking a reference regarding

Olle from Janeway or Szanto. Olle testified that she was never told that she failed to get a job for which she applied because of a lack of reference from NAJP.

### The Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact; and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); SCS Communications, Inc. v. Herrick Co., Inc., 360 F.3d 329, 338 (2d Cir.2004); see generally 11 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.11 (3d ed. 1997 & Supp. 2004). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to comment jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal citations omitted). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060–61 (2d Cir.1995).

A material fact is one that would "affect the outcome of the suit under the govern-

ing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) ("[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment.").

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir.2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir.1993). The non-movant cannot escape summary judgment, however, "merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture," *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citations omitted); *accord Giordano v. City of New York*, 274 F.3d 740, 749–50 (2d Cir. 2001), particularly where such speculation is unsubstantiated. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). In other words, the non-movant must invoke more than just "metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S.Ct. 1348. In order to defeat a motion for summary judgment, the non-moving party must offer sufficient evidence to enable a reasonable jury to return a verdict in its favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Byrnie*, 243 F.3d at 101; *Scotto*, 143 F.3d at 114.

 In addressing the present motion, the Court is mindful that Olle is proceeding *pro se* and that her submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *accord Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). District courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). These same principles apply to briefs submitted by *pro se* litigants. *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir.2003); *Burgos*, 14 F.3d at 790. Nonetheless, a litigant's *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (quotation marks omitted); *see also Edwards v. I.N.S.*, 59 F.3d 5, 8–9 (2d Cir.1995). Indeed, proceeding *pro se* "does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981(WHP)(JCF), 1999 WL 983876, at

*3 (S.D.N.Y. Oct. 28, 1999) (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)); *see also Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995).

## Discussion

### I. *Olle Is Not Entitled to Further Discovery and a Continuance of the Pending Motion for Summary Judgment*

As a preliminary matter, Olle argues that Defendants have not cooperated with discovery and claims that, to date, they "hide non-legal letters to the Columbia administration behind attorney-client privilege." (Pl. Opp. Mem. at 4.) Olle states that she has not seen a single letter from Columbia discussing the reasons for her dismissal and that these letters are pertinent to her claims. Reading Olle's papers liberally and construing her argument as an application under Fed.R.Civ.P. 56(f) to grant a continuance of adjudication on the summary judgment motion pending further discovery, she has failed to demonstrate that any such continuance is warranted.

Following the close of discovery on November 2, 2003, Olle sought to reopen discovery and requested production of correspondence between Janeway, Szanto, and Columbia's administration concerning her performance and dismissal by a letter dated November 11, 2003. On December 15, 2003, this Court ordered that any correspondence relating to Olle's dismissal be produced. On January 3, 2004, Olle's subsequent motions to compel discovery and to stay adjudication of the summary judgment motion were denied in light of Defendants' representations that they had fully complied with the Court's order of December 15, 2003. On January 29, 2004, the Court denied Olle's request that Defendants be directed to produce certain documents identified on Defendants' privilege log on the basis that Olle had failed to demonstrate that the materials in question were not privileged as Defendants claimed.

■ Rule 56(f), Fed.R.Civ.P., provides that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion. *See Commercial Cleaning Servs., L.L.C. v. Colin Serv. Systems, Inc.,* 271 F.3d 374, 386 (2d Cir.2001) (citing *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995); *Hellstrom v. U.S. Dep't of Veteran's Affairs,* 201 F.3d 94, 97 (2d Cir.2000)). To obtain relief under Rule 56(f), the party seeking additional discovery must submit an affidavit or declaration detailing (1) the nature of the uncompleted discovery; (2) how the facts sought are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful. *See Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999); *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994); *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy,* 891 F.2d 414, 422 (2d Cir.1989); *see also Demery v. Extebank Deferred Comp. Plan (B),* 216 F.3d 283, 286 (2d Cir.2000) (It is proper to deny discovery where the plaintiffs "did not delineate what, if any, additional discovery they needed or wanted to pursue, and how such discovery could raise an issue of material fact."); *Contemporary Mission Inc. v. U.S. Postal Serv.,* 648 F.2d 97, 102 (2d Cir.1981) ("'An opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis on which to justify the denial of the [summary judgment] motion.'") (quoting *Neely v. St.*

*Paul Fire & Marine Ins. Co.,* 584 F.2d 341, 344 (9th Cir.1978)).

▮ Even if Olle's application were procedurally adequate, which it is not, she has failed to offer any justification for granting an extension of discovery and deferring a determination of the summary judgment motion other than her allegation that Defendants improperly withheld certain letters from her and that the letters are relevant to these proceedings. In particular, she has not set forth the facts sought or how they may be reasonably expected to create a genuine issue of material fact. This Court has already ruled that Olle has failed to demonstrate that the materials in question are not privileged and Olle has not presented any grounds here for reconsidering that determination. Accordingly, deferring a determination on the pending motion for summary judgment is unwarranted. *Cf. John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.,* 154 F.Supp.2d 527, 552 (S.D.N.Y.2001) (declining to grant a Rule 56(f) application where the requisite showing had not been made and where the magistrate judge had previously ruled that the plaintiff had failed to show that non-privileged documents were being withheld); *Bushnell v. Vis Corp.,* No. 95 Civ. 4256(MHP), 1996 WL 506914, at *8-9 (N.D.Cal. Aug.29, 1996) (refusing to grant a continuance under Rule 56(f) where the plaintiff, who was seeking discovery of documents listed on the defendants' privilege log, had failed to show either his entitlement to the privileged materials or how access to the materials would aid his cause).

**2.** Although her amended complaint does not expressly assert causes of action related to age-based discrimination, both Defendants and Olle have treated her claims as if age-based discrimination were alleged, and this Court will follow suit.

## II. Summary Judgment for Defendants Is Granted on Olle's First, Second, and Third Causes of Action

Olle alleges that she has been subjected to sex and age[2] discrimination in four respects, namely that she has been subjected to discrimination arising from a hostile work environment, improper termination, the violation of various terms and conditions of her employment, and certain retaliatory practices.[3]

### A. Title VII, NYSHRL and NYCHRL Standards

Claims of discrimination under Title VII are analyzed under the three-part test announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, in order to establish a *prima facie* case of discrimination, a plaintiff must show (1) that he or she is a member of a protected class, (2) that he or she was qualified for the position in question, (3) that he or she suffered an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817; *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003); *Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002); *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000). As the Court of Appeals for the Second Circuit has recently observed,

An "adverse employment action" is one which is " 'more disruptive than a mere

**3.** Olle also asserts a fourth cause of action in her amended complaint, namely that Defendants have caused her to suffer depression, anxiety, mental anguish and stress-related heart problems.

inconvenience or an alteration of job responsibilities.' " *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993)). Examples of materially adverse employment actions include " 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.' " *Id.* (quoting *Crady*, 993 F.2d at 136).

*Feingold v. New York*, 366 F.3d 138, 152 (2d Cir.2004); *accord Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir.2004).

Where a plaintiff makes out a *prima facie* case, the defendant may then rebut the plaintiff's showing by articulating a legitimate, non-discriminatory reason for the employment action in question. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *Weinstock*, 224 F.3d at 42. Upon defendant's articulation of such a reason, the presumption of discrimination arising with the establishment of the *prima facie* case "drops from the picture," and for the case to continue, the plaintiff must present evidence that the proffered reason is "a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42; *see also Feingold*, 366 F.3d at 152 ("If the defendant has stated a neutral reason for the adverse action, 'to defeat summary judgment ... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.' ") (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997)).

The " 'consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims.' " *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 n. 2 (2d Cir.2003) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir.2000)); *see also Smith v. Xerox Corp.*, 196 F.3d 358, 363 n. 1 (2d Cir.1999) ("[S]ince claims under the NYSHRL are analyzed identically to claims under the ADEA and Title VII, the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under the ADEA and Title VII" and need not be addressed separately.) (citing *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n. 1 (2d Cir.1999)).

The Second Circuit has repeatedly emphasized that the trial court must be "especially cautious" in deciding whether to grant summary judgment in a discrimination case "because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (citing *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir.1994)).

### i. *Hostile Work Environment*

Olle has alleged that throughout her employment at NJAP she was subjected to sexist comments by Janeway and Szanto "at almost every encounter" (Compl. at ¶ 54) and that these comments, taken together with various other alleged actions created a hostile work environment. Defendants argue that Olle has not established a *prima facie* case with regard to this claim insofar as she has not established circumstances giving rise to an inference of discrimination.

■ "A hostile work environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult' ... that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) (additional citations omitted), *abrogated on other grounds, Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In order to survive summary judgment on a hostile work environment claim, "a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (internal quotation marks and citations omitted); *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987) ("A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive.").

■■ A hostile work environment may be shown in one of two ways: "[A] 'plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir.2000) (quoting *Cruz*, 202 F.3d at 570 (internal quotation marks omitted)); *cf. Deters v. Lafuente*, 368 F.3d 185, 189 (2d Cir.2004) (observing, in the context of a retaliation claim, that "'[i]ncidents that are relatively minor and infrequent will not meet the standard' for a discriminatorily hostile environment") (quoting *Phillips v. Bowen*, 278 F.3d 103,

109 (2d Cir.2002)). Isolated remarks are not sufficient to sustain a hostile environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (observing that "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"); *Whidbee*, 223 F.3d at 69 ("Incidents that are 'few in number' and that occur 'over a short period of time' may fail to demonstrate a hostile work environment.") (quoting *Lopez*, 831 F.2d at 1189); *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.1999) ("Isolated, minor acts or occasional episodes do not warrant relief."); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) ("The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (internal quotation marks and citation omitted).

■ A plaintiff alleging that he or she was subjected to a hostile work environment must also "prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted 'discrimina[tion]' ... because of ... sex'" or another protected category. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (emphasis in original). "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." *Brennan*, 192 F.3d at 318; *accord Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir.2004). Whether a reasonable person would have found a work environment hostile depends on considerations such as "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the

conduct unreasonably interferes with the employee's work performance." *Brennan,* 192 F.3d at 319 (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367); *see also Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 437 (2d Cir.1999).

▬ Notwithstanding the quantity of arguments and allegations fielded by Olle, she has not established a *prima facie* case of discrimination arising from a hostile work environment. Although she has alleged that she was subjected to sexist comments by Janeway and Szanto on a regular basis, virtually all of the fellows in residence at NAJP while Olle worked there as well as her co-workers have submitted declarations attesting that not one of them has heard a sexist or offensive remark directed at Olle.[4] Although she has asserted that may of the remarks were made behind closed doors and outside of the presence of others, at her deposition, Olle was unable to recount more than a few remarks, and each of the remarks in question were either unsupported by admissible evidence or benign. For instance, although her amended complaint cites a specific example of Szanto making sexist remarks about her after she left the room, Olle testified that she had no idea what, if anything, was said, and the fellow she suggested would know of the comment denies the incident took place.

Olle points to an e-mail from Szanto in which he wrote that Olle's "charm and connections" would help NAJP attract luncheon speakers[5] and suggests that this e-mail further demonstrates the hostile work environment to which she was subjected. (Kaplan Decl., Exh. 15.) The e-mail, however, cannot reasonably be interpreted as offensive or sexist, as Olle acknowledged at her deposition that the e-mail also implied that Janeway and Szanto had used their charm and connections to attract speakers and that she did not think such behavior was unprofessional.

Olle further alleges that in response to her request for advice on how to improve her relationship with Janeway, Szanto once told her to speak to Janeway about cats and to use her "feminine wiles." (Compl. at ¶ 29.) Olle has not suggested why the comment about cats was gender-based except to speculate that it would not have been said to a man. Olle maintains that the suggestion that she use her "feminine wiles" is sexist; even if the comment could reasonably be deemed offensive, this incident was isolated and relatively benign.

Similarly, although Olle and Defendants dispute the precise Hungarian expression used by Szanto in reference to a fellowship applicant, whether Szanto uttered *Megsazanyodott orgelany* (which Olle translates as "old girl turns sour") or *Megalszik a szajaban a tej* (which Defendants translate as "milk turns to yoghurt in his or her mouth") is immaterial, as, even drawing

---

4. Olle contends that the declarations submitted by Defendants are "ones that Defendants picked and chose" and that a number of fellows, Columbia staff, and Pew representatives refused or declined to provide Defendants with declarations in support of their motion. (Pl. Opp. Mem. at 14.) Olle has offered no support for these allegations. Moreover, as Defendants note, the fellows identified by Olle who have not submitted declarations were not at NAJP·while Olle was employed there and the Columbia employees identified were not employees of NAJP.

5. The undated e-mail from Szanto to Olle, in response to Olle's own e-mail dated February 7, 2001, explains NAJP's policy on providing honoraria to speakers and reimbursing speakers for travel-related expenses. The e-mail concludes: "Lastly, there are the intangibles of charm and connections. These two things have helped us a lot [in attracting speakers], and I think you add to our firepower on both fronts." (Kaplan Decl., Exh. 15).

inferences in Olle's favor, any offensive to be derived from the comment is relatively minor.

Olle alleges that on three occasions when she asked Janeway about NAJP policy, he referred her back to her pre-hire interview. Olle acknowledged at her deposition that Janeway answered many of her questions fully in e-mails and could not recall what it was that he told her had been covered at her pre-hire interview. She argues, however, that Janeway's explanation of policy in e-mails or by reference to her interview demonstrates that he was behaving in a sexist manner. Olle has pointed to no aspect of these interactions that would establish that Janeway was acting in a discriminatory or otherwise offensive manner.

Olle maintains that Janeway's comments about a sexual fantasy at a luncheon with Ensler, author of the *Vagina Monologues,* were offensive. Defendants, however, have submitted declarations from five witnesses who attended the luncheon and deny believing the remarks were offensive or inappropriate. Olle's suggestion that a witness will testify at trial regarding the alleged offensiveness of Janeway's comments is insufficient to establish a material issue of fact here or otherwise suggest that Janeway's comments could be reasonably deemed offensive. Nowhere is it suggested that Olle herself attended the luncheon in question.

Olle states that she was prevented from speaking to Columbia's administration but does not provide any examples of communications she was prevented from making. Her only support for this claim is an e-mail in which Janeway told her that she should not be communicating directly with an individual at Pew. Olle has not suggested why it was sexist, ageist or otherwise discriminatory or inappropriate for Janeway

to tell her to clear communication with Pew's representative through him.

Olle also claims that Szanto verbally abused her along with two NAJP fellows, Person and Conner, while on a trip to Ireland. Both Person and Conner have submitted declarations denying that they felt abused by Szanto, and Olle testified at her deposition that Szanto's alleged angry outburst was a function of his temperament and not sexist.

Olle asserts that other NAJP employees have been subjected to sex discrimination, yet employees at NAJP at the same time that Olle was employed there have denied feeling mistreated in any way. Olle has alleged that, three years before she began to work at NAJP, Im, an employee at the time, had been asked to file e-mails between Janeway and Szanto that contained sexist and disgusting remarks about female NAJP fellows. Even if an incident occurring three years before Olle's arrival at NAJP were relevant, Olle acknowledged at her deposition that she has never spoken to Im and she does not know what the e-mails said. Im has submitted a declaration denying ever seeing or being asked to file anything sexist, disgusting or otherwise inappropriate.

Similarly, Olle has claimed that Chapman, an employee at NAJP for at least some of the time that Olle was employed there, is aware of a history of sex discrimination at NAJP. Chapman submitted a declaration in support of Defendants' motion in which she denied ever having heard Janeway or Szanto make remarks that she thought were sexist, racist, ageist, homophobic or otherwise offensive, and she further denied having found NAJP to be a hostile work environment for women.

Olle also suggests that Szanto asked Torres, another NAJP employee, to write a letter documenting an incident in which she felt she had been rudely treated by a

fellowship candidate and that Szanto's request was sexist because Szanto, according to Olle, would not have asked a man to write such a letter and Szanto probably coached Torres to overstate the significance of the situation. Torres has submitted a declaration denying Olle's characterization of the situation, of which Olle admitted that she had no actual knowledge, and, in any event, Olle has not suggested how the incident could be reasonably construed to be sexist.

Olle argues that Defendants' failure to call for a police investigation of what she claims was a break-in of her office cubicle on the eve of her departure from NAJP constitutes gender-based harassment, since there would have been a police investigation if a man had been in the cubicle, according to Olle. Olle has cited to no evidence suggesting that a break-in occurred. Even if a break-in had occurred or was suspected, Olle has not established how Defendants' failure to pursue a police investigation—particularly where Olle is not aware of anything having been stolen—could be inferred to be discriminatory or otherwise contributed to creating a hostile work environment.

Finally, Olle points to a variety of anonymous responses received from past NAJP fellows (the majority of whom were not at NAJP at the same time as Olle) in response to a Pew study, many of them critical of NAJP and its management. These survey responses are both inadmissible and irrelevant to Olle's claims. *See, e.g., Murphy v. Bd. of Educ. of Rochester,* 273 F.Supp.2d 292, 302 (W.D.N.Y.2003) (concluding that allegations of discrimination against students and other purported systemic discrimination that did not in-

volve the plaintiff teacher directly were irrelevant to the teacher's claim of discrimination and granting summary judgment to the employer), *aff'd,* 2004 WL 1682887 (2nd Cir. Jul.28, 2004) (unpublished); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 262 (E.D.N.Y.1999) (declining to find that possible discrimination against students was relevant to a teacher's claim of discrimination). The survey responses do not mention Olle, say nothing about the treatment of any employee, and do not report either sexism or ageism in NAJP's treatment of its employees.[6] To the extent that the surveys include complaints related to purported discrimination experienced or observed, they relate to alleged race-based discrimination or sexual orientation discrimination, and are not relevant to Olle's claims of sex- and age-based discrimination here. *See, e.g., Kelly v. Boeing Petroleum Servs.,* 61 F.3d 350, 358 (5th Cir.1995) (affirming the district court's conclusion that acts of unrelated discrimination were irrelevant to the plaintiff's claims); *Murphy,* 273 F.Supp.2d at 313 (observing that allegations of discrimination against women and blacks was not relevant to white male plaintiff's claim); *Simonetti v. Runyon,* No. 98 Civ. 2128, 2000 WL 1133066, at *6 (D.N.J. Aug. 7, 2000) ("[P]laintiff may not use evidence of one type of discrimination to prove discrimination of another type."); *Rivera v. Baccarat, Inc.,* No. 95 Civ. 9478(MBM)(JCF), 1997 WL 777887, at *2 (S.D.N.Y. Dec. 15, 1997) (concluding that purported gender bias or sexual harassment was irrelevant to claims of national origin and age discrimination and, thus, inadmissible); *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 949 F.Supp. 13, 19 (D.D.C.1996) ("The fact

6. The sex— and age–related comments that Olle has identified in her opposition papers display, at most, dissatisfaction with the ages of fellows selected and the proportion of fe-

male fellows in the program, and do not suggest the existence of sex or age discrimination at NAJP with regard to its employees' work environment.

that the plaintiff may have been discriminated against based on his sex ... is irrelevant to his national origin discrimination claim.").

On this record, Olle has not established the existence of a triable issue of fact with regard to her hostile work environment claim, nor has she shown that most of the behavior described could reasonably be understood to be offensive or discriminatory. The few instances where offensive conduct might reasonably be inferred are both minor and isolated, and, accordingly, are insufficient as a matter of law to demonstrate the existence of a hostile work environment "that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Tomka,* 66 F.3d at 1305. Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

### ii. *Improper Termination*

■ In order to establish a *prima facie* case of discriminatory discharge in violation of Title VII, Olle must show (1) that she belongs to a protected class, (2) that she was competent to perform the job or performing her duties satisfactorily, (3) that she was discharged, and (4) that her discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class. *See, e.g., Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 767 (2d Cir.2002); *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997). The burden that an employment discrimination plaintiff must meet in order to defeat summary judgment at the *prima facie* stage is *de minimis. See, e.g., McLee,* 109 F.3d at 134.

Defendants appear to concede Olle's membership in a protected class and the fact that she was discharged. They contend, however, that Olle was not performing her job satisfactorily, and cite testimony from Janeway and Szanto as well as documentary evidence attesting to their concerns about Olle's performance. Where, Defendants argue, a plaintiff has not controverted substantial evidence that his or her work was substandard, the plaintiff has not met the *prima facie* burden.

■ Although Olle has not submitted evidence disputing Defendants' claim, the Second Circuit has "long emphasized that the qualification prong must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Gregory v. Daly,* 243 F.3d 687, 696 (2d Cir.2001) (citing *Powell v. Syracuse Univ.,* 580 F.2d 1150, 1155 (2d Cir.1978)). Thus,

> To show "qualification" sufficiently to shift the burden of providing some explanation for discharge to the employer, the plaintiff "need not show perfect performance or even average performance." *Id.* at 1155 (quoting *Flowers v. Crouch–Walker Corp.,* 552 F.2d 1277, 1283 (7th Cir.1977)). Instead, she need only make the "minimal showing" that *"she 'possesses the basic skills necessary for performance of [the] job.'"* *Owens v. New York City Housing Auth.,* 934 F.2d 405, 409 (2d Cir.1991) (quoting *Powell,* 580 F.2d at 1155) (emphasis added); *accord de la Cruz v. New York City Human Res. Admin. Dep't of Social Servs.,* 82 F.3d 16, 20 (2d Cir.1996).

*Gregory,* 243 F.3d at 696. Where an employee has been terminated, "the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified." *Id.*

■ Defendants have not identified concerns with Olle's qualification for the position in question, nor do the concerns with the quality of her performance that they have identified demonstrate that Olle's performance was "so manifestly poor as to render her unqualified for continued employment and thereby defeat her *prima facie* case." *Id.* at 697 n. 7 (citing *McLee* as "concluding, in the summary judgment context, that no *prima facie* case had been made out where, after a probationary period, the employer rated plaintiff's work unsatisfactory on a majority of criteria and plaintiff did not contest most of these ratings"). Accordingly, an inference of minimal qualification shall be drawn here in Olle's favor, thereby satisfying the second prong of the standard.[7]

Notwithstanding this conclusion, Olle has not made out a *prima facie* case of discriminatory discharge here, as she has not shown nor does careful scrutiny of the record suggest that her termination occurred in circumstances giving rise to an inference of discrimination on the basis of her sex or age. Olle's claim, on information and belief, that she was replaced by a man has not been substantiated and, indeed, has been disproved by Defendants. The various anecdotes and allegations set forth above in the context of Olle's hostile work environment claim do not represent circumstances giving rise to an inference of discrimination on the basis of either Olle's age or her gender with regard to the termination of her position.

■ Even assuming, *arguendo*, that Olle had satisfied her burden of showing a *prima facie* case of discriminatory discharge, Defendants have rebutted Olle's showing by articulating two legitimate, non-discriminatory reasons for her termination. First, the record shows that as early as February 2001, three months after Olle commenced work at NAJP, Janeway and Szanto identified concerns about Olle's performance. Those concerns included her uncertainty about well-established policies and decisions, problems with her management of the NAJP newsletter, problems with her communications with fellows, breaches of protocol with respect to communications with Pew representatives, and Janeway's view that Olle had "a deficiency of strong native managerial instinct." (Kaplan Decl., Exh. 8.) Dissatisfaction with an employee's work performance is a legitimate, non-discriminatory ground for the employee's termination. *See, e.g., Gregory*, 243 F.3d at 696; *Clarke v. One Source Facility Servs., Inc.*, 168 F.Supp.2d 91, 97 (S.D.N.Y.2001); *Dais v. Lane Bryant, Inc.*, 168 F.Supp.2d 62, 72 (S.D.N.Y.2001).

Second, Janeway and Szanto, based on Beeby's suggestion that the managerial structure of NAJP might have been misconceived in relation to the size of the program, determined to eliminate the Associate Director position that Olle held at the time. Notwithstanding Olle's speculation that she was replaced by a man, the record establishes that the position in question has been eliminated. The re-

---

7. This is not to suggest that the concerns with Olle's performance documented by Defendants are irrelevant. The Second Circuit has recognized that,

> An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action. But the crucial point

remains the same: the qualification prong, as to which the initial burden lies on plaintiff, cannot be transformed into a requirement that the plaintiff anticipate and disprove an employer's explanation that inadequate ability or performance justified the job action at issue.

*Gregory*, 243 F.3d at 696–97.

structuring of operations has repeatedly been recognized by the courts as a legitimate, non-discriminatory reason for termination. *See, e.g., Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir. 1988); *Stephens v. Thomas Pub. Co.,* 279 F.Supp.2d 279, 283 (S.D.N.Y.2003); *Pesok v. Hebrew Union College–Jewish Institute of Religion,* 235 F.Supp.2d 281, 286 (S.D.N.Y.2002), *aff'd sub nom., Pesok v. Lutwak,* 86 Fed. Appx. 479 (2nd Cir.2004) (unpublished).

] As Defendants have articulated two legitimate, non-discriminatory reasons for Olle's termination, Olle must now present evidence that the proffered reason is "a mere pretext" for actual "discrimination" in order to proceed with her claim. *Weinstock,* 224 F.3d at 42. A reason, however, "cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted) (emphasis in original). On a motion for summary judgment, the plaintiff must proffer evidence sufficient to allow a rational fact-finder to infer that the employer's rationale for terminating the employee was pretextual and that the real reason for the termination was discrimination. *See Cruz,* 202 F.3d at 567.

Olle has failed to raise any triable issue of fact as to whether the proffered reasons for her discharge were merely a pretext for sex or age discrimination. Olle's allegation that she was terminated in advance of a study commissioned by Pew of NAJP fellows because she was "in a position to be considered a potential whistleblower" (Pl. Opp. Mem. at 3) is conclusory and not sufficient to create an issue of fact. The only evidence identified by Olle consists of an e-mail dated May 29, 2001, that Janeway sent to Szanto after Olle was told of her termination. In that e-mail, Janeway reiterates the decision to reorganize, explaining that "we made the decision we made and we're sticking with it—period, we're reorganizing," but suggesting that

[I] thought the whole point about the 'reorganization' scenario was that we stayed with the script, and our resolution of the situation, painful as it might be, did not get into ameliorative measures to ease the pain, as if we'd gone down the road (which I would have preferred in many ways) of 'it didn't work out.' … [I] feel that we've been caught between telling the truth about incompetent performance, together with copious statement approaching discipline about it, and the script we agreed to.…

(Pl.Exh. 8.) Although a fact-finder might infer from this e-mail that the reorganization "scenario" was itself at least partially a pretext for terminating Olle due to her work performance, no inference may be drawn from this e-mail that the real reason for Olle's termination was discrimination, nor has Olle cited to any other evidence from which such an inference reasonably could be drawn.

 Olle has also argued that Janeway and Szanto did not receiving training on sexual harassment and sex-based discrimination. Whether or not Janeway or Szanto has received training while at Columbia with regard to sexual harassment and sex-based discrimination does not, contrary to Olle's suggestion, create an issue of fact as to whether the reasons given for Olle's termination were pretextual. Accordingly, summary judgment on Olle's discriminatory discharge claim is appropriate.

### iii. *Discrimination in Other Terms and Conditions of Employment*

Olle's amended complaint alleges that she suffered discrimination with respect to

her wages,[8] promotion, training and other terms and conditions of her employment. She has not established a *prima facie* case of discrimination, however, as she has not identified any changes with respect to these terms and conditions of employment that would constitute materially adverse actions. *See Feingold,* 366 F.3d at 152; *Sanders,* 361 F.3d at 755.

Olle argues that she was not offered any training in gender and race discrimination by Columbia and that Columbia is at fault for posting its sexual harassment policy on the internet rather than on a bulletin board where employees might see it regularly, but she has not demonstrated that the failure to provide training or post the sexual harassment policy on a bulletin board was an adverse action, much less a materially adverse action.[9] Olle further argues that Nor does Janeway's direction to Olle that she should not be communicating directly to an individual at Pew constitute a significant diminution of her material responsibilities. Similarly, the fact that Janeway and Szanto signed the NAJP fellows' diplomas as well as a letter partially drafted by Olle to the NAJP Board of Directors while Olle did not sign these documents does not suggest that she was subjected to a materially adverse change in the conditions of her employment or otherwise denied credit for her work improperly in light of their relative positions of seniority within NAJP. *Cf., e.g., Ombu v. Children's Television Workshop,* 516 F.Supp. 1055, 1062 (S.D.N.Y.1981) (holding that the plaintiff's claim that the defendant discriminated

against him by not giving him in-house publication credit for a project on which he worked was conclusory and insufficient to rebut the defendant's asserted non-discriminatory rationale of giving credit only for finalized projects). Accordingly, as Olle has failed to establish a *prima facie* case of discrimination with regard to the terms and conditions of her employment, summary judgment is warranted.

### iv. *Retaliatory Practices*

In her amended complaint, Olle alleges that Janeway warned her not to say anything negative about him because it would hurt her chances of finding employment and threatened to omit to give a recommendation or to give a neutral recommendation to her future prospective employers. She further alleges that Janeway and Szanto acted on the threat by refusing to offer any comments or recommendations to Olle's prospective employers, and that Defendants also injured her chances of employment or caused her to lose employment by continuing to post on the internet after her termination a copy of the newsletter Olle had edited along with her no longer functional Columbia e-mail address without that e-mail address having a forwarding message.

Defendants assert that Olle abandoned her retaliation claim during her deposition when she answered in the negative twice when asked if she was asserting a claim for retaliation. Olle, however, has reiterated her retaliation claim in her opposition papers. Whether Olle abandoned her retaliation claim at her deposition need not

---

**8.** At her deposition, Olle abandoned her claim of discrimination with regard to her wages.

**9.** Olle further argues that Janeway and Szanto did not receive adequate training on issues related to discrimination. This argument only appears relevant to the extent that Janeway and Szanto could be found to have en-

gaged in discriminatory conduct for which Columbia may be held vicariously liable. As summary judgment is being granted in favor of Defendants here, Olle's assertion, understood as support for a claim of vicarious liability, is of no moment.

be decided, since, even assuming Olle did not abandon her retaliation claim, she has failed to demonstrate the existence of a genuine issue as to a material fact and Defendants are entitled to judgment as a matter of law.

██ In order to establish a *prima facie* case of retaliation, an employee must establish " '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.' " *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998) (quoting *Tomka,* 66 F.3d at 1308), *abrogated in part on other grounds by, Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *accord Feingold,* 366 F.3d at 156; *Terry,* 336 F.3d at 141. As with a claim of discrimination, a claim of retaliation brought under Title VII is evaluated under the three-part burden-shifting analysis set forth in *McDonnell Douglas. See Feingold,* 366 F.3d at 157; *Terry,* 336 F.3d at 141; *Coffey v. Dobbs Int'l Servs., Inc.,* 170 F.3d 323, 326 (2d Cir.1999).

██ Olle has not sustained her burden of establishing a *prima facie* case of retaliation. Even if the filing of the complaint in this matter constitutes a protected activity, the record demonstrates that Janeway and Szanto did not refuse to give recommendations regarding Olle, as she has alleged. Instead, on a single occasion, Szanto declined to offer any comments regarding Olle's employment at NAJP in light of a Columbia policy not to provide more than basic employment information in response to an outside inquiry without authorization from the employee. Olle has not shown how Szanto's action or Columbia's policy disadvantaged her, as she never heard from any source that the absence of a Columbia reference prevented her from getting a job, nor has she presented circumstantial evidence that this may have occurred. Moreover, she has not demonstrated a causal connection between her protected activity and Szanto's adherence to Columbia's policy.

██ Similarly, the continued availability of an archived edition of the NAJP newsletter on the internet which contains an out-of-date e-mail address for Olle without a forwarding message is not sufficient to establish a *prima facie* case of retaliation. Olle has failed to demonstrate that the continued availability of this out-of-date e-mail address constitutes an employment action disadvantaging her. Furthermore, her contention that maintaining the defunct e-mail address on the internet caused her to lose work is conclusory at best and insufficient to support her claim.

Even assuming, *arguendo,* that Olle had established a *prima facie* case of retaliation with regard to either of these claims, Defendants have articulated legitimate, non-retaliatory reasons for the actions concerned and Olle has done nothing to show that these reasons are pretextual and that Defendants actions were actually retaliatory.

### III. Olle's Fourth Cause of Action Is Dismissed Without Prejudice

Defendants have not addressed Olle's fourth cause of action—that Defendants allegedly caused her to suffer depression, anxiety, mental anguish and stress-related heart problems—in their motion papers, nor has Olle addressed that claim in her opposition papers at any length. Construing the fourth cause of action in the light most favorable to Olle, she appears to be stating a claim arising under New York tort law. Although Defendants' motion seeks dismissal of the amended complaint in its entirety, summary judgment as to

the fourth cause of action will not be granted here on that basis alone, in light of Olle's status as a *pro se* litigant and the fact that none of the parties have addressed the claim in question. Nonetheless, as summary judgment is being granted with respect to the claims over which this Court has original jurisdiction, this Court must determine whether to continue to exercise supplemental jurisdiction over Olle's remaining state law claim.

■ The fact that the remaining claim in this action arises under state law does not require automatic dismissal for lack of subject matter jurisdiction. To the contrary, " 'the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, [although] it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.' " *Parker v. Della Rocco,* 252 F.3d 663, 666 (2d Cir.2001) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996)). The statutory authority for the exercise of such supplemental jurisdiction is found in 28 U.S.C. § 1367(c)(3), according to which a district court "may decline to exercise supplemental jurisdiction over a claim ... if ... [it] has dismissed all claims over which it has original jurisdiction," as is the case here. 28 U.S.C. § 1367(c)(3).

■ Nonetheless, "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) (citing *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994); *Baylis v. Marriott Corp.,* 843 F.2d 658, 664–65 (2d Cir.1988)); *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *87th St. Owners Corp. v. Carnegie Hill–87th St. Corp.,* 251 F.Supp.2d 1215, 1222 (S.D.N.Y.2002) (declining to exercise supplemental jurisdiction and noting that "[t]his is the preferred course when all federal claims have been dismissed pre-trial," particularly where "difficult issues of state law more appropriately addressed to the state courts" are at stake); *Louis v. St. Luke's Roosevelt Hosp. Ctr.,* No. 01 Civ. 11400(RWS), 2002 WL 1684175, at *3 (S.D.N.Y. July 24, 2002) (noting the "well-established rule of dismissing pendant state and municipal claims where the federal claim providing jurisdiction has been dismissed").

As there are no longer any claims based on federal law in this action and with due consideration of concerns of judicial economy, convenience and fairness, pursuant to 28 U.S.C. § 1367(c)(3) this Court declines to exercise supplemental jurisdiction over Olle's remaining claim. *See Gilmore v. Amityville Union Free School Dist.,* 305 F.Supp.2d 271, 279 (E.D.N.Y.2004) (declining to exercise supplemental jurisdiction where federal claims had been dismissed); *see also Block v. First Blood Assocs.,* 988 F.2d 344, 351 (2d Cir.1993) (concluding that, even though "courts adjudicating cases similar to plaintiffs' have declined to dismiss pendent claims after the federal claims were dismissed," the district court did not abuse its discretion by "refusing to exercise pendent jurisdiction over plaintiffs' state law claims when their federal claims were dismissed before trial"). Ac-

cordingly, Olle's remaining claim is dismissed without prejudice.

*Conclusion*

For the reasons set forth, Defendants' motion for summary judgment is granted as to the first, second, and third causes of action in Olle's amended complaint, and her fourth cause of action is dismissed without prejudice.

This action is closed.

It is so ordered.